**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5646-17T4

YOON H. BAE and
SIN Y. CHUNG,

     Plaintiffs-Respondents,

v.

ROMAN LEYFMAN,

     Defendant,

and

MARINA GLEYZER, as
Administratrix/Executrix of the
ESTATE OF ROMAN LEYFMAN,

     Defendant-Appellant.

_____

          Submitted July 9, 2019 – Decided September 26, 2019

          Before Judges Nugent and Accurso.

          On appeal from the Superior Court of New Jersey, Law
          Division, Bergen County, Docket No. L-5274-15.

Hammerman Rosen, LLP, attorneys for appellant (Marina Gleyzer, on the briefs).[1]

Sim & Record, LLP, attorneys for respondents (Sang Joon Sim, on the brief).

PER CURIAM

Marina Gleyzer appeals from a June 29, 2018 order permitting plaintiffs Yoon H. Bae and Sin Y. Chung to withdraw $250,000 on deposit in the Superior Court Trust Fund pursuant to a settlement of this tort action against defendants the late Roman Leyfman and his estate, for which Gleyzer, his daughter, is administratrix. Finding no error, we affirm.

The facts are largely undisputed and easily summarized. Mr. Leyfman struck Yoon Bae with his car as she pushed a baby carriage in a pedestrian crosswalk across Palisades Avenue in Fort Lee, causing her serious injuries. Mr. Leyfman passed away while the case was pending, and his insurance carrier tendered its $250,000 policy into court pursuant to Rule 4:57-1. Plaintiffs amended their complaint to add his estate and Gleyzer as administratrix.

The day before the parties were to report for trial, plaintiffs' counsel sent a letter to Judge Polifroni reporting the case settled and thanking the court for

---

[1] A Substitution of Attorney was filed by Marvin J. Hammerman four months after briefs were filed; the case was not argued.

A-5646-17T4

its assistance, copied to all counsel. When Gleyzer failed to make payment in accordance with the agreement plaintiffs believed they had struck, they moved to enforce the settlement. Plaintiffs' counsel submitted a certification averring that plaintiffs had agreed to accept $450,000 in full settlement of their claims, $250,000 of which would come from the insurance proceeds on deposit with the Superior Court, with the remaining $200,000 payable in quarterly installments of $50,000 each by Gleyzer.

Insurance counsel for defendant Leyfman submitted a certification explaining his efforts in negotiating settlement had been limited to the insurance proceeds, and as to funds over that amount, the estate had its own counsel, Anthony M. Carlino. He stated his understanding that Gleyzer had recently consulted with new counsel, and at that new counsel's request he was submitting Gleyzer's certification in opposition to the motion to enforce settlement, while advising he would take no position on the motion.

In her certification, Gleyzer claimed plaintiffs were attempting to enforce a settlement she believed was never finalized. Gleyzer did not refute plaintiffs' counsel's assertion that the case had settled for $450,000. Instead she claimed the estate was without assets, and "[w]hen [she] considered settling the case," she was under the mis-impression that she "could be held personally responsible

3

for [her] father's negligence and that [she] would be forced to sit through a two week trial and pay a lawyer to sit with [her]" at a cost over $50,000. Gleyzer explained she "considered settling" the case because she was "sick and [didn't] have a lot of money" and "wanted this case to be over without having to interfere with [her] . . . treatment or pay a lawyer to try it." She claimed, however, that she "wanted to pay the money over many years" and "never agreed to or contemplated paying any amount of money within the next year."

At Gleyzer's direction, Mr. Carlino, the counsel who negotiated settlement on her behalf, did not appear in court on the return date of the motion. Gleyzer appeared with new counsel, who advised the court she had not yet executed a substitution of counsel. Counsel for plaintiffs stated on the record that counsel for the estate, Mr. Carlino, telephoned to advise him his client would increase her prior offer of $175,000 to $200,000 to settle the case, which he accepted after negotiating the medical liens to a sum acceptable to his clients. New counsel for Gleyzer agreed her client had offered $175,000 to settle, but claimed that offer "was rejected. Therefore, there was never a settlement." Counsel claimed Gleyzer "never authorized anyone to offer $200,000."

After hearing from counsel for plaintiffs and Gleyzer, Judge Harz asked insurance counsel his understanding of the settlement. After reiterating he was

4

not involved in the negotiations of the amount to be paid from personal assets, he advised the court that he was advised by both Mr. Carlino and plaintiffs' counsel that the case had settled for $200,000 over the proceeds of the policy, and he prepared and circulated a release reflecting that amount.

New counsel for Gleyzer represented her client remained willing to pay $175,000 to settle the case but would need to pay that sum over several years as "technically speaking the Estate is penniless because the property is in a Trust." Upon further questioning from the court, new counsel for Gleyzer explained the decedent's wife, Gleyzer's mother, lived in the trust property in New Jersey and that there was also trust property located in Florida. Counsel acknowledged the decedent created the trust after the filing of the lawsuit, but asserted "there was no fraudulent conveyance." Counsel claimed the decedent was "elderly," and "very ill," and not "paying his bills" and "so the properties were put into a trust so that somebody could administer the trust."

After hearing argument, Judge Harz entered an order on March 26, 2018, enforcing the settlement. In a rider to the order, the judge noted Gleyzer did not contest plaintiffs' counsel's representation that Mr. Carlino communicated an offer on behalf of Gleyzer to contribute $200,000 to the settlement to be paid in four quarterly installments. Instead, the judge noted Gleyzer's certification

A-5646-17T4

focused on her "concern regarding payment terms." Considering that certification, as well as the representations of plaintiffs' and insurance counsel and the letter to Judge Polifroni, sent the day before trial reporting the case had settled, Judge Harz found the $200,000 in quarterly installments "was the offer that had been tendered by Ms. Gleyzer and that was accepted by plaintiffs."

Critically, no appeal was taken from that order. Gleyzer's appeal is from the June 29, 2018 order occasioned by a motion filed by plaintiffs to permit them to withdraw the insurance proceeds from the Superior Court Trust Fund following Gleyzer's refusal to consent to the withdrawal. That motion, however, did not toll the time for taking a timely appeal of the order enforcing settlement. See Camden Lime Co. v. Borek, 63 N.J. Super. 174, 181 (App. Div. 1960); see also R. 2:4-3(e) (listing the motions that toll the running of the time for taking an appeal). In the rider to the June 29 order, Judge Harz noted Gleyzer's failure to appeal the order of March 26, 2018 enforcing settlement. The judge further noted that the opposition submitted by new counsel for Gleyzer, who the court also noted never formally appeared in the matter, argued "issues pertaining to the enforcement of the settlement, and [did] not provide any substantive argument regarding withdrawal of the funds."

A-5646-17T4

Similarly, Gleyzer's arguments on appeal all relate to enforcement of the settlement, not to the June 29, 2018 order appealed. See Campagna ex rel. Greco v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001) (noting "it is clear that it is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review") (quoting Pressler, Current N.J. Court Rules, cmt. 6 on R. 2:5-1(f)(3)(i) (2001)). Gleyzer's statement that she was appealing the June 29, 2018 order and "prior orders" in her case information statement is not sufficient. See Synnex Corp. v. ADT Sec. Servs. Inc., 394 N.J. Super. 577, 588 (App. Div. 2007); Pressler & Verniero, Current N.J. Court Rules, cmt. 2.3.2 on R. 2:2-3 (2019). More important here, Gleyzer cannot resuscitate an untimely appeal of a final order terminating the litigation by a timely appeal of a collateral order entered months later. See R. 2:4-3(e).

Even were it possible for us to review the March 26, 2018 order, which it is not, see R. 2:4-4(a) (limiting extensions in civil appeals to thirty days), we would find no error. Gleyzer's failure to directly refute plaintiffs' counsel's certification that the case settled for $450,000, including a $200,000 contribution over insurance proceeds, her failure to provide any certification from her counsel, Mr. Carlino, who tendered the settlement offer, as well as her

7

direction that he not appear on the motion to enforce settlement, coupled with the understanding of all counsel that the case had settled for $450,000 and their advice to Judge Polifroni the case was settled, all support Judge Harz's finding that no hearing was necessary to resolve the issue. See Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App. Div. 1997) (noting a hearing is required on a motion to enforce a settlement, only when the evidence, considered in a light most favorable to the party disputing settlement, is insufficient to permit the judge to find there was an agreement to settle). The evidence here was simply too one-sided to require a hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5646-17T4